UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2023 ... 12  PM 3: 25

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ D.T _____
DEPUTY

| | |
|---|---|
| ERIK SALAIZ, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| **FREEDOM SOLAR LLC,** a Texas Limited | § |
| Liability Company | § |
| | § |
| **Defendant.** | § |
| | § |

# EP23CV0196

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.     Defendant FREEDOM SOLAR LLC ("Freedom" "Defendant") is a limited liability company organized and existing under the laws of Texas with its principal address at 4801 Freidrich Lane, Suite 100, Austin, Texas 78744 and can be served via its registered agent National Registered Agents, Inc. at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.     Unnamed Party JOHN DOE TELEMARKETER ("John Doe") is an unidentified offshore telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant PNC.

### JURISDICTION AND VENUE

4.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff; adds little complexity to the case.

5.      Personal Jurisdiction. This Court has general personal jurisdiction over the Defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

6.      Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

7.      This Court has venue over the Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

8.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

2

telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

4

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

21.    Plaintiff successfully registered his personal cell phone number (XXX) XXX-0898 on the National Do-Not-Call Registry since August 19, 2021, which was more than 31 days prior to receiving the alleged calls.

22.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

23.    Defendant Freedom offers solar panel systems to consumers in Florida, Colorado, North Carolina, Virginia, and Texas.

24.    As part of their marketing, Defendant Freedom hired and instructed an anonymous offshore telemarketer to make phone calls on behalf of Defendant Freedom to tele solicit their solar panel services.

25.    John Doe unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

26.    John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Defendant Freedom.

27.    John Doe employs the use of an automatic telephone dialing system ("ATDS") in furtherance of their telephone marketing campaign on behalf of Defendant Freedom.

28.    John Doe's ATDS has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

29.     John Doe makes these calls on behalf of Defendant Freedom without prior express written consent from the consumers they call.

30.     John Doe knowingly and willfully makes solicitation phone calls on behalf of Defendant Freedom to consumers that have their residential phone numbers registered on the National Do-Not-Call Registry.

31.     Defendant Freedom approves of the contracts with John Doe.

32.     Defendant Freedom authorizes the payments to John Doe.

33.     Defendant Freedom pays John Doe out of bank accounts Defendant Freedom owns and controls.

34.     Defendant Freedom has been sued prior to this lawsuit for violating the TCPA *Naiman v. Freedom Forever, LLC et al*, No. 3:19-cv-00256-WHA (CA.ND., Jan. 14, 2019) and continues their illegal behavior because violating the TCPA benefits Defendant Freedom financially.

35.     Plaintiff received at least five (5) unauthorized phone calls within a twelve-month period ("the calls") from John Doe calling on behalf of Defendant Freedom soliciting solar panel systems.

36.     The calls were generated using an ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

37.     The calls John Doe made to Plaintiff on behalf of Defendant Freedom were not made to Plaintiff directly and could have reached anyone in the United States (indicating the call was made using an ATDS).

38.    John Doe made at least five harassing solicitation calls to Plaintiff calling on behalf of Defendant Freedom before Plaintiff was able to identify the company John Doe was calling on behalf of.

39.    Plaintiff has never been a customer of Defendant Freedom, and had no relationship with Defendant Freedom, which is an indication of the use of an ATDS.

40.    Defendant Freedom or John Doe had no reason to have Plaintiff's phone number 0898 in their possession or in any database or spreadsheet that would have been used to call Plaintiff.

41.    **Calls #1-4** – Plaintiff answered and was greeted by telemarketers calling from John Doe soliciting solar panel systems on behalf of Defendant Freedom.

42.    The telemarketers from John Doe did not ask for Plaintiff directly and the calls could have reached anyone in the United States.

43.    Plaintiff advised the telemarketers at least three times that Plaintiff was not interested, however the calls continued.

44.    John Doe spoofed the caller ID numbers they called Plaintiff from including using Plaintiff's area code to trick Plaintiff into thinking the calls were being made local.

45.    **Call #5** - On January 12, 2023, Plaintiff received a call to his personal cell phone ending in 0898 from a telemarketer from John Doe calling on behalf of Defendant Freedom from phone number (915) 493-2181.

46.    Plaintiff answered and was greeted by a male telemarketer from John Doe named Adam soliciting solar panel systems.

47.    Adam stated to Plaintiff,

"The reason of my call we are reaching out to the homeowners who are paying high electric bill and helping them to reduce their electric bill up to seventy percent without paying any money out of your pocket."

7

48.     Adam then continued to ask Plaintiff qualifying questions regarding Plaintiff's electric bill, credit score, employment, income, and solicited Plaintiff for solar panel systems on behalf of Defendant Freedom.

49.     Plaintiff did not want or need solar panel systems however advised Adam he was interested, in order to identify the company responsible for the calls.

50.     Adam then asked for Plaintiff's name which confirmed the call was not sent to Plaintiff directly and could have reached anyone in the United States indicating the call was made using an ATDS.

51.     Adam advised Plaintiff he was going to transfer Plaintiff to his "solar expert."

52.     Plaintiff was then transferred to a representative from Defendant Freedom named James Hill.

53.     Before Adam transferred the call to James, Adam stated to James,

"Uh Hi James uh I have one of the customers here with me on the line his name is Erik he is interested in getting more information about solars so please guide him further thanks."

54.     James accepted the call from Adam which confirmed Defendant Freedom hired John Doe as their lead generator.

55.     James asked Plaintiff more qualifying questions and solicited Plaintiff for a solar panel system on behalf of Defendant Freedom.

56.     Plaintiff received an email from James that contained the solar proposal and a link to James virtual business card.

57.     Plaintiff clicked on James virtual business card and it displayed James as an energy specialist with Defendant Freedom along with a link to Defendant Freedom's website https://freedomsolarpower.com.

58.     The email Plaintiff received from James revealed that Defendant Freedom is the company

responsible for hiring and authorizing John Doe to make the calls to Plaintiff.

59.    With information and belief Defendant Freedom relies on John Doe to make telemarketing calls on its behalf, Defendant Freedom has direct knowledge that such calls are being made to residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

60.    With information and belief Defendant Freedom relies on John Doe to make telemarketing calls on its behalf, Defendant Freedom hired them to interact with the public on Defendant Freedom's behalf and therefore gave implied authority to represent Defendant Freedom and call residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

61.    Defendant Freedom ratifies the behavior of John Doe by knowing of the illegal conduct and failing to repudiate the conduct.

62.    Plaintiff did not give his prior express written consent to receive any of the alleged calls.

63.    None of the alleged calls were made for emergency purposes.

64.    Plaintiff made at least three do not call requests ("DNC") to John Doe.

65.    Table A below displays the calls made to Plaintiff on behalf of Defendant Freedom.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1. | 01/03/2023 | 11:26 AM | 915-493-2662 | Telemarketer calling from John Doe soliciting solar panel systems. Told them I wasn't interested and to stop calling. **DNC Request #1** |
| 2. | 01/09/2023 | 12:05 PM | 915-493-2769 | Telemarketer calling from John Doe soliciting solar panel systems. Told |

| | | | | |
|---|---|---|---|---|
| | | | | them I wasn't interested and to stop calling. **DNC Request #2** |
| 3 | 01/09/2023 | 5:37 PM | 915-493-2420 | Telemarketer calling from John Doe soliciting solar panel systems. Told them I wasn't interested and to stop calling. **DNC Request #3** |
| 4 | 01/10/2023 | 10:26 AM | 915-493-2651 | Telemarketer calling from John Doe soliciting solar panel systems and the call dropped. |
| 5 | 01/12/2023 | 10:27 AM | 915-493-2181 | Telemarketer calling from John Doe soliciting solar panel systems. Transferred me to James from Freedom Solar. |

66.    John Doe initiated numerous unsolicited telephone calls, made unlawful telemarketing sales pitches to Plaintiff regarding solar panel systems on behalf of Defendant Freedom.

67.    Defendant Freedom employs, contracts, or authorizes John Doe to make phone calls on their behalf.

68.    John Doe uses various spoofed caller IDs and knowingly and willfully ignore Do Not Call lists in the marketing of services on behalf of Defendant Freedom.

69.    Defendant Freedom has knowledge of and has adopted and maintained TCPA violations as a sales strategy.

70.    Defendant Freedom knew full well that John Doe is calling and harassing consumers in an attempt to procure business on behalf of the Defendant Freedom.

71.    Defendant Freedom willfully accept these referrals and compensate John Doe for their illegal phone calls.

72.    Each and every call was placed while knowingly ignoring the national do-not-call

10

registry.

73.     Defendant Freedom is not registered pursuant to § 302.101 of the Texas Business &

Commerce Code to provide telephone solicitations. The

https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration

Database") does not contain Defendant Freedom's registration.

74.     Defendant Freedom does not qualify for an exemption under § 302.053.

75.     Plaintiff sent an internal Do-Not-Call policy request to Defendant Freedom to email

customerservice@freedomsolarpower.com on May 6, 2023, which is am email listed on their

website they own and control  https://freedomsolarpower.com.

76.     Defendant Freedom never sent Plaintiff any Do-Not-Call policy.

77.     On information and belief, Defendant Freedom did not train John Doe who engaged in

telemarketing on the existence and use of any do-not-call list from Defendant Freedom.

78.     Upon information and belief, John Doe did not have a written do-not-call policy from

Defendant Freedom while it was sending Plaintiff the calls.

79.     Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

80.     Plaintiff has limited data storage capacity on his cellular telephone.

81.     Incoming telemarketing calls consumed part of this capacity.

## VICARIOUS LIABILITY OF DEFENDANT FREEDOM

82.     Defendant Freedom is vicariously liable for the telemarketing calls that generated the

lead on their behalf.

83.     The FCC is tasked with promulgating rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

84.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

85.    The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

86.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

12

87.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

88.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

89.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

90.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

91.     Defendant Freedom is legally responsible for ensuring that John Doe that makes telemarketing calls on their behalf comply with the TCPA when so doing.

92.     Defendant Freedom knowingly and actively accepted business that originated through illegal telemarketing.

93.     Defendant Freedom knew (or reasonably should have known) that John Doe was violating the TCPA on their behalf but failed to take effective steps within their power to force them to cease that conduct.

94.     By hiring a company to make calls on its behalf, Defendant Freedom "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

13

95.    Moreover, Defendant Freedom maintained interim control over the actions of John Doe.

96.    For example, Defendant Freedom had absolute control over whether, and under what circumstances, they would accept a customer from John Doe.

97.    Furthermore, Defendant Freedom had day-to-day control over the actions of John Doe, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant Freedom and the ability to require them to respect the National Do Not Call Registry.

98.    Defendant Freedom also gave interim instructions to John Doe by providing lead-qualifying instructions and lead volume limits.

99.    Defendant Freedom donned John Doe with apparent authority to make the calls at issue. Thus, John Doe pitched solar panel systems in the abstract.

100.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

101.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

102.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

103.    John Doe transferred customer information, including Plaintiff's contact information, directly to Defendant Freedom. Thus, John Doe had the "ability . . . to enter consumer

information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

104.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

105.    Defendant Freedom is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

106.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

107.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

108.    The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

109.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

15

302.303.

110.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

111.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

112.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

113.    The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

114.    The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

115.    The calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

116.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

117.    The calls were to Plaintiff's cellular phone 0898 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his

16

residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

118.    The actions of the Defendant violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b). The calls on behalf of the Defendant violated Texas law by placing calls using an ATDS to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

119.    The calls by the Defendant violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## CAUSES OF ACTION:

## COUNT ONE:

## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

119.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

120.    Defendant and/or their telemarketer or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing calls to

17

Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

121.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

122.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court triple the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

123.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls

## COUNT TWO:

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

124.    Mr. Salaiz realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

125.    Defendant and/or their telemarketer or agents called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

126.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

127.    Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

128.    Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

129.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

130.    The foregoing acts and omissions of Defendant constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

  a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

  b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

  c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

131.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

132.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of The Texas Business and Commerce Code 305.053)

133.    Plaintiff incorporates the foregoing allegations as if set forth herein.

134.    The foregoing acts and omissions of Defendant and/or their telemarketers or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

135.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

136.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FIVE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

137.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

138.    Defendant's telemarketers/agents made at least five (5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

139.   As a result of Defendant's telemarketers/agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

140.   As a result of Defendant's agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant severally as follows:

A.   Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.   A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.   An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.   An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for five calls.

E.   An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for five calls.

F.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for five calls.

21

G.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for five calls.

H.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.    An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity.

J.    Such further relief as the Court deems necessary, just, and proper.

May 12, 2023,                                    Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com